Dale J. Lambert, #01871 (dale.lambert@chrisjen.com)
Rebecca L. Hill, #06246 (rebecca.hill@chrisje.com)
CHRISTENSEN & JENSEN, P.C.
15 West South Temple, Suite 800
Salt Lake City, UT 84101
Telephone: 801-323-5000

*Attorneys for Plaintiffs Hartford Casualty Insurance Co. and
Twin City Fire Insurance Co.*

L. Michael Brooks, Jr. (mbrooks@warllc.com)
WELLS, ANDERSON & RACE, LLC
1700 Broadway, Suite 1020
Denver, CO  80290
Telephone: (303) 830-1212
Fax: (303) 830-0898
(*Pro Hac Vice* Pending)

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, an Indiana corporation, and TWIN CITY FIRE INSURANCE COMPANY, an Indiana corporation, ) ) ) ) | Case No.:   2:10-cv-01098 |
| ) | Judge:       Bruce S. Jenkins |
| Plaintiffs, ) | |
| v. ) ) | **COMPLAINT FOR DECLARATORY RELIEF** |
| SOFTWAREMEDIA.COM, INC., a Washington corporation; PERSEUS TRADING CORPORATION, a Washington corporation, a/k/a PERSEUS TRADING, INC., ADAM CHILDERS, an individual; and TODD FRANCIS, an individual, ) ) ) ) ) ) ) | **JURY DEMANDED** |
| Defendants. ) ) ) ) | |

---

Plaintiffs, Hartford Casualty Insurance Company and Twin City Fire Insurance Company, by and through their attorneys Dale J. Lambert and Rebecca L. Hill of the law firm of Christensen & Jensen, P.C., and L. Michael Brooks of the law firm Wells, Anderson & Race, LLC, hereby submit this Complaint for Declaratory Relief and state as follows:

### THE PARTIES

1.     Plaintiff, Hartford Casualty Insurance Company ("Hartford") is an Indiana corporation with its principal place of business in Hartford, Connecticut.

2.     Plaintiff, Twin City Fire Insurance Company ("Twin City") is an Indiana corporation with its principal place of business in Hartford, Connecticut.

3.     Defendant SoftwareMedia.com, Inc. ("SoftwareMedia.com") is a Washington corporation with its principal place of business in Salt Lake City, Utah.

4.     Defendant Perseus Trading Corporation, a/k/a Perseus Trading, Inc. ("Perseus Trading"), is a Washington corporation registered to do business in Utah.

5.     Defendant Adam Childers ("Mr. Childers") is a resident of Utah.  Upon information and belief, Mr. Childers controls and operates SoftwareMedia.com.

6.     Defendant Todd Francis ("Mr. Francis") is a resident of Utah.  Upon information and belief, Mr. Francis was and is an employee or agent of SoftwareMedia.com.

### JURISDICTION AND VENUE

7.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiffs and the Defendants and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(a) because a

substantial part of the events or omissions giving rise to this lawsuit occurred within this jurisdiction.

## GENERAL ALLEGATIONS

9.     SoftwareMedia.com and Perseus Trading were insured under a commercial general liability policy (the Commercial General Liability Coverage Form) issued by Hartford and Twin City, Policy No. 34 UUQ TZ4569 SC, with effective dates from January 1, 2007, through January 1, 2008.  The policy provided liability coverage, subject to specific terms, limitations, and exclusions.  A copy of this policy is attached as **Exhibits 1(a), 1(b), 1(c), 1(d) and 1(e)**.[1]  That policy was renewed annually.

10.     SoftwareMedia.com and Perseus Trading were insured under umbrella liability policy (the Umbrella Liability Policy) issued by Hartford and Twin City, Policy No. 34 XHQ XR3759, with effective dates from January 1, 2007, through January 1, 2008.  That policy was renewed annually.  A copy of this policy is attached as **Exhibit 2**.

11.     The Named Insureds on both the Commercial General Liability Policy and the Umbrella Liability Policy were Perseus Trading and SoftwareMedia.com.

12.     Microsoft Corporation, a Washington corporation with its principal place of business in Redmond, Washington, is the Plaintiff in an action styled *Microsoft Corp. v. SoftwareMedia.com, Inc., Adam Childers*, *and Todd Francis*, Case No. 2:10-cv-00526, United States District Court for the District of Utah, Central Division (the "Microsoft Action").

13.     Microsoft develops, advertises, markets, distributes, and licenses a number of computer software programs and related products.  Microsoft's software programs are recorded

---

[1] Plaintiffs have separated the policy into subparts in order to permit electronic filing of the Complaint.  Exhibit 1(e) contains the relevant commercial general liability portion of the policy.

and distributed on CD-ROMs and/or magnetic diskettes, and are also distributed via authorized electronic download.

14.     Defendants advertise and distribute Microsoft software and related products on the Internet, including Defendants' website at www.softwaremedia.com, and by other means.

15.     In 2004, Microsoft sued Perseus Trading, SoftwareMedia.com, and Mr. Childers for copyright infringement and other claims, *Microsoft Corporation v. Perseus Trading Corp., et al.*, Case No: 2:04-CV-00056-PGC (United States District Court, District of Utah).  That case resulted in the entry of a permanent injunction enjoining Perseus Trading, SoftwareMedia.com, and Mr. Childers from infringing on Microsoft's copyrights and trademarks.

16.     On June 7, 2010, Microsoft filed a second Complaint against SoftwareMedia.com, Mr. Childers, and Mr. Francis in an effort to obtain injunctive relief and recover damages arising from infringements of Microsoft's copyrights and other violations by Defendants.  A copy of the Microsoft Complaint is attached as **Exhibit 3**.  This lawsuit comprises the Microsoft Action, which is the subject of this declaratory judgment action.  The Complaint in the Microsoft Action alleges that from at least 2007 to the present, Defendants have actively engaged in a fraudulent bait-and-switch scheme in connection with their sale of Microsoft products.  The Complaint alleges further that a direct and inevitable consequence of Defendants' alleged fraud has been widespread infringement of Microsoft's copyrights by unsuspecting customers who were allegedly led by Defendants to believe that they had purchased valid licenses to use Microsoft's software.  (Ex. 3, Microsoft Compl. ¶ 1.)

17.     The Microsoft Complaint alleges several theories of recovery, including: Copyright Infringement, Federal Trademark Infringement, False Designation of Origin, Fraud,

Breach of Contract, Intentional Interference with Economic Relations, and Unjust Enrichment. (*See* Ex. 3.)

18.     The Complaint in the Microsoft Action contains the following allegations of fact against Defendants:

a.      "From at least 2007 to the present, Defendants have actively engaged in a fraudulent bait-and-switch scheme involving sales of Microsoft software licenses and Software Assurance.  Defendants have switched and are continuing to switch customer orders for Microsoft software licenses with less expensive Software Assurance which is not a license and creates no license rights.  Upon information and belief, Defendants have engaged in this sales practice with intent to deceive Microsoft and Defendants' customers, and to retain for Defendants the significant price difference between licenses and Software Assurance.  A direct and inevitable consequence of Defendants' fraud has been widespread infringement of Microsoft's copyrights by unsuspecting customers who were led by Defendants to believe they had purchased valid licenses to use Microsoft software."  (Ex. 3, Microsoft Compl. ¶ 21.)

b.      "Defendants have endeavored to conceal their fraudulent bait-and-switch scheme from Microsoft and Defendants' customers.   For example, Defendants purport to "sell every Microsoft retail product available [and] list every Microsoft Licensing SKU [stock keeping unit, also known as part number]" on their website.  However, a Microsoft investigator was unable to locate any of the part numbers used by Defendants when ordering Software Assurance. That information, had it been available on Defendants' website, could have alerted customers to the fact that Defendants had altered their orders."  (*Id.* ¶ 29.)

c.     "A preliminary review of Microsoft sale records shows that since July 2006, SoftwareMedia.com has sold 49,891 units of Software Assurance without software licenses.  How many of those sales are the result of Defendants' fraudulent bait-and-switch scheme is unknown to Microsoft."  (*Id.* ¶ 30.)

d.     "Upon information and belief, by this conduct, including their advertising activities and unauthorized use of Microsoft's software, components, screen displays, product packaging and marks to describe the items that they distribute and sell, Defendants misappropriated Microsoft's advertising ideas and style of doing business and infringed Microsoft's copyrights, titles and slogans, and trademarks."  (*Id.* ¶ 33.)

e.     "Upon information and belief, Defendants' violations are willful, deliberate and committed with prior notice and knowledge of Microsoft's copyrights and trademarks.  Defendants' wrongful conduct has caused and continues to cause significant and irreparable harm to Microsoft.  Microsoft brings this action to recover damages for the harm it sustained, to impose a constructive trust upon Defendants' illegal profits and assets purchased with those profits, and to obtain injunctive relief prohibiting Defendants' further violations."  (*Id.* ¶ 34.)

19.     The Microsoft Complaint further alleges that "Defendants' representations and omissions were false and misleading, and were intended by them to deceive or mislead Microsoft . . . " and that [t]he false representations and omissions were made by the defendants with knowledge of their falsity . . . and were intended by Defendants to be acted on by Microsoft to its detriment."  (*Id.* ¶¶ 73, 72.)

20.     The Microsoft Complaint is premised on the Defendants' alleged unlawful sales practice; specifically, the Defendants' alleged fraudulent bait-and-switch scheme involving sales of Microsoft's software products.  (*Id.* ¶¶ 1, 21)

21.     All of the allegations in the Microsoft Action against Defendants arise out of Defendant's alleged knowing, willful, and deliberate actions, including Defendants' alleged false representations with knowledge of their falsity.

22.     On June 7, 2010, the same date the Complaint in the Microsoft Action was filed, Microsoft filed a Motion for Order to Show Cause, seeking an order of contempt and a temporary restraining order against Softwaremedia.com and Mr. Childers, based on the same conduct as alleged in the Complaint in the Microsoft Action.

23.     On or about June 24, 2010, Mr. Childers (via counsel) notified Hartford of the Microsoft Action, seeking coverage from Hartford pursuant to the Hartford Commercial General Liability Coverage Form.  In response, Hartford wrote to Mr. Childers by letter dated June 25, 2010 and acknowledged that tender had been made, stated it was investigating the claim, and reserved all rights as to coverage.  A copy of this letter is attached as **Exhibit 4**.

24.     After thoroughly investigating the Microsoft Action, Hartford sent Mr. Childers a letter, dated July 14, 2010, reserving all rights regarding coverage under the Commercial General Liability Coverage Form.  Hartford specifically addressed the duties to defend and indemnify SoftwareMedia.com, Mr. Childers, or Mr. Francis in connection with the Microsoft Action.  A copy of this letter is attached as **Exhibit 5**.

25.     Hartford concluded that there was no coverage on the basis that the gravamen of the Complaint in the underlying litigation was a claim for injury from SoftwareMedia.com's

"bait and switch" sales activities, rather than a claim for injury resulting from advertising injury. Thus, the allegations in the Microsoft Complaint did not state a claim for which the Hartford Policy provided coverage based on the policy's insuring language.  Further, exclusions to the Hartford Policy independently barred coverage.  The relevant provisions of the Commercial General Liability Coverage Form are outlined below.

26.     The same day that Hartford wrote to Mr. Childers conveying its conclusion that there was no coverage and reserving its rights, Mr. Childers (via counsel) wrote to Hartford by letter stating that settlement negotiations were ongoing between Microsoft and Softwaremedia.com and, further, made demand on Hartford for payment in the amount of Microsoft's current settlement demand, $1.9 million.  A copy of this letter is attached as **Exhibit 6**.

27.     Hartford responded by letter dated July 15, 2010, in which it invited the insureds to provide factual information that would affect the determination that the allegations in the Microsoft Complaint on their face failed to state a claim for which the Hartford Policy provides coverage.  A copy of this letter is attached as **Exhibit 7**.

28.     Mr. Childers (via counsel) wrote to Hartford on August 9, 2010, stating that Microsoft and SoftwareMedia.com had reached a settlement effective that date, which included monetary terms on the amount and timing of payments (totaling $1.8 million) and nonmonetary terms involving an injunction.  In response to Hartford's requests for factual information that would affect the conclusion that the Microsoft Complaint on its face did not trigger coverage, Mr. Childers stated that the Microsoft Complaint itself "could be read" to implicate coverage.  A copy of this letter is attached as **Exhibit 8**.

29.     On information and belief, the Court entered a permanent injunction in the

Microsoft Action on September 2, 2010, based on the parties' stipulation, barring the Defendants

from buying or selling Microsoft Software Assurance as a stand-alone product.  The Microsoft

Action was dismissed with prejudice through stipulated motion of the parties on September 8,

2010.

30.     On October 5, 2010, Hartford, through its counsel, wrote to Defendants' counsel

to advise them formally that Hartford had determined that no coverage was available for the

claims against Defendants and that Hartford has no duty to reimburse Defendants for any defense

costs incurred in the Microsoft Action and no duty to indemnify Defendants for the settlement

Defendants entered into with Microsoft.  A copy of this letter is attached as **Exhibit 9**.

### THE HARTFORD COMMERCIAL GENERAL LIABILITY COVERAGE FORM

31.     The Commercial General Liability policy issued by Hartford and Twin City to

Defendants (Exhibit 1) contains the following relevant language:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

* * * *

### SECTION  I - COVERAGES

* * * *

### COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1.     Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated
to pay as damages because of "personal and advertising injury" to
which this insurance applies.  We will have the right and duty to
defend the insured against any "suit" seeking those damages.
However, we will have no duty to defend the insured against any
"suit" seeking damages for "personal and advertising injury" to

- 9 -

which this insurance does not apply.

\* \* \* \*

b.      This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

\* \* \* \*

**2.      Exclusions**

This insurance does not apply to:

a.      **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

b.      **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c.      **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period.

\* \* \* \*

f.      **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement".

\* \* \* \*

i.      **Infringement Of Intellectual Property Rights**

- 10 -

"Personal and advertising injury" arising out of any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

However, this exclusion does not apply to infringement, in your "advertisement", of

    **(1)**    Copyright;

    **(2)**    Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity; or

    **(3)**    Title of any literary or artistic work.

\* \* \* \*

**k.**    **Your Web Site, Electronic Chatrooms Or Bulletin Boards[2]**

"Personal and advertising injury" arising out of "your web site" or an electronic chat room or bulletin board hosted, owned, or over which control is exercised by any insured.

\* \* \* \*

**SECTION V - DEFINITIONS**

**1.**    "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

\* \* \* \*

**a.**

\* \* \* \*

    **(4)**    **Magazine;**

\* \* \* \*

---

[2] This exclusion is as stated in Endorsement Form HC 00 89 10 01, Exclusion – Web Site Related Personal And Advertising Injury.

**b.** Any other publication, other than through The Internet, that is given widespread public distribution. . . .[3]

\* \* \* \*

**2.** "Advertising idea" means any idea for an "advertisement".

\* \* \* \*

**17.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

\* \* \* \*

**f.** Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";

**g.** Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement" . . . .

\* \* \* \*

"Your web site" means a web page or set of interconnected web pages prepared and maintained by you, or by others on your behalf, that is accessible over an internet.[4]

## THE HARTFORD UMBRELLA LIABILITY POLICY

32.     The Umbrella Liability Policy issued by Hartford and Twin City to Defendants

(Exhibit 2) contains the following relevant language:

In this policy the words "you" and "your" refer to the Named Insured first shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy.  "We", "us" and "our" refer to the stock insurance

---

[3] This definition is as modified in Endorsement Form HC 00 89 10 01.

[4] This definition is added by Endorsement Form HC 00 89 10 01.

company member of The Hartford Financial Services Group, Inc. shown in the Declarations.

* * * *

## SECTION I - COVERAGES

## INSURING AGREEMENTS

### A.  Umbrella Liability Insurance

1.      We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance" or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies caused by an "occurrence".  But, the amount we will pay as "damages" is limited as described in Section IV – LIMITS OF INSURANCE.

* * * *

2.      This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" only if:

   a.   The "bodily injury", "property damage" or "personal and advertising injury" occurs during the "policy period"; and

   a.   Prior to the "policy period", no insured listed under Paragraph A. of Section III – Who is An Insured and no "employee authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period".

* * * *

## Exclusions

This policy does not apply to:

* * * *

- 13 -

**3.** **Contractual Liability**

Liability assumed by the "insured" under any contract or agreement with respect to an "occurrence" taking place before the contract or agreement is executed.

**4.** **Personal And Advertising Injury**

This policy does not apply to "personal and advertising injury".

**EXCEPTION**

This exclusion does not apply if "underlying insurance" is applicable to "personal and advertising injury" and to claims arising out of that "personal and advertising injury".

\* \* \* \*

## SECTION VII – DEFINITIONS

\* \* \* \*

**"Occurrence"** means

\* \* \* \*

2.    With respect to "personal and advertising injury": an offense described in one of the numbered subdivisions of that definition in the "underlying insurance".

**"Policy period"** means the period beginning with the inception date stated as such in the Declarations and ending with the earlier of:

1.    The date of cancellation of this policy; or

2.    The expiration date stated as such in the Declarations.

\* \* \* \*

33.     The Umbrella Liability Policy includes multiple policy endorsements, including one which modifies Exclusion 4., the "personal and advertising injury" exclusion.  That endorsement is set forth on Form XL 21 33 11 00 and provides as follows:

### EXCLUSION – PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the **UMBRELLA LIABILITY POLICY**

This policy does not apply to "personal and advertising injury."

* * * *

### CLAIM FOR DECLARATORY RELIEF (ABSENCE OF COVERAGE)

34.     Plaintiffs incorporate herein, by reference, all the allegations contained in paragraphs 1 through 33.

35.     The Defendants in the Microsoft Action, who are all Defendants in this action, are seeking to recover damages under the Commercial General Liability Coverage Form and possibly the Umbrella Liability Policy issued by Hartford and Twin City in connection with the settlement agreement entered into between Defendants and Microsoft.

36.     The Complaint in the Microsoft Action is premised on the allegation that Defendants have actively engaged in a fraudulent bait-and-switch scheme in connection with their *sale* of Microsoft products.  A direct and inevitable consequence of Defendants' fraud has been widespread infringement of Microsoft's copyrights by unsuspecting customers who were led by Defendants to believe they had purchased valid licenses to use Microsoft software.  (Ex. 2, Microsoft Compl.¶¶ 1, 21.)

37.     Hartford has no duty to defend, indemnify, or settle the underlying claim and lawsuit because the claim is not one for "personal and advertising injury" under the Commercial General Liability Coverage Form's insuring language.

38.     Given the nature of the allegations in the Microsoft Complaint, the only type of liability that could possibly arise in this case, if any, would be liability for "personal and advertising injury".  The Policy provides coverage for "personal and advertising injury," defined as injury arising out of: "[c]opying, in your 'advertisement', a person's or organization's 'advertising idea' or style of 'advertisement'"; or "[i]nfringement of copyright, slogan, or title of any literary or artistic work, in your 'advertisement'."  Both prongs of this definition incorporate the term "advertisement," which is defined as "widespread public dissemination of information or images" for the purpose of sale of products, "other than through the Internet."  "Advertising idea" is defined as "any idea for an 'advertisement'."

39.     The Microsoft Action does not fall within the above insuring language for the following reasons:

        a.      The first prong of the "personal and advertising injury" definition is not implicated because Microsoft's Complaint fails to allege any facts showing that its "advertising idea" or "style of advertisement" were "copied."

        b.      The second prong of the "personal and advertising injury" definition is not implicated because Microsoft's Action is not one for infringement of copyright or other type of "infringement" in "advertisement."   The gravamen of the Complaint is not that Microsoft sustained harm to its copyright rights as a result of advertising, but rather that the harm is the result of the insured's alleged sales activities.  Scattered references to "advertising" in the

Microsoft Complaint do not change the fundamental nature of the claim; the suit is clearly

targeted at the Defendant's sales activities, not its "advertisement."

      c.      Neither prong of the "personal and advertising injury" definition is

implicated or triggered because the allegations are based on Internet activity, which is excluded

from the definition of "advertisement."  SoftwareMedia.com is clearly in the business of making

sales through the Internet, as its name and the allegations in Microsoft's Complaint demonstrate.

(*See* Ex. 2, Microsoft Compl. ¶ 18.)  There is no reasonable basis to infer that Microsoft's claims

against SoftwareMedia.com involve advertising in any of the other types of media which fall

within the confines of the defined term "advertisement."  Moreover, in response to Hartford's

invitation to provide information that would affect Hartford's determination that Microsoft's

Complaint does not assert a claim for advertising injury, SoftwareMedia.com has been unable to

produce any non-Internet advertisements that implicate Microsoft's claims against it.

      40.      Further, even if Microsoft's claim fell within the Commercial General Liability

Coverage Form insuring agreement, a number of exclusions are implicated that independently

bar any coverage for this claim.  Specifically, coverage is excluded on the following grounds:

      a.      **Exclusions B.2.a. and B.2.b., Knowing Violation of Rights Of Another**

and **Material Published With Knowledge Of Falsity.**  These exclusions are implicated as the

Complaint in the Microsoft Action is replete with allegations of "knowing", "willful", and

deliberate misconduct, and includes allegations of false representations with knowledge of their

falsity.  The Complaint alleges:  "At a minimum, Defendants were substantially certain that their

unlawful sales practices would result in infringements of Microsoft's copyrights by Defendants'

customers."  (Ex. 2, Microsoft Compl. ¶ 39.)  The Complaint further alleges that "[t]he false

representations and omissions were made by the defendants *with knowledge of their falsity* . . . and were intended by Defendants to be acted on by Microsoft to its detriment." (*Id.* ¶ 72.)  Thus, the Microsoft Complaint expressly charges that (a) the insured acted with the expectation of inflicting injury, and (b) made false representations with knowledge of their falsity.  The applicability of these exclusions is further underscored by Microsoft's 2004 litigation against Softwaremedia.com, Perseus Trading, and Mr. Childers, which resulted in entry of a permanent injunction prohibiting infringement of Microsoft's intellectual property rights.

      **b.**      **Exclusion B.2.c., Material Published Prior To Policy Period.**  The existence of prior litigation against Softwaremedia.com, Perseus Trading, and Mr. Childers supports the applicability of this Exclusion.

      **c.**      **Exclusion B.2.f., Breach Of Contract.**  The Complaint filed in the Microsoft Action includes a breach-of-contract claim, which is barred by this exclusion.

      **d.**      **Exclusion B.2.i., Infringement Of Intellectual Property Rights.**  The Complaint includes numerous claims of violation of intellectual property rights, including copyright infringement, trademark infringement, and false designation of origin.  These claims trigger the "intellectual property" exclusion.

      **e.**      The intellectual property exclusion contains an exception for "infringement, in your 'advertisement', of (a) [c]opyright; (b) [s]logan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity; or (c) [t]itle of any literary or artistic work."  However, that exception does not apply here.  Microsoft's claim of copyright infringement is grounded in theories of bait-and-switch sales, not through "advertisement."  Also, there is no claim of infringement of "slogan," nor of any infringement of

"title of any literary or artistic work."  This exclusion is, thus, an independent basis for concluding no coverage exists here.

      **f.**      **Exclusion HH008910 01, Your Web Site.**  This exclusion states, in relevant part, "[t]his insurance does not apply to 'personal and advertising injury' arising out of your website . . . . "  Therefore, even if the insuring agreement was met, which it is not, there is no coverage for such injury when it arises out of SoftwareMedia.com's website, which Microsoft's alleged injury does here.

      41.      Nor do the allegations in the Microsoft Complaint give rise to coverage under the Umbrella Liability Policy.  Given the nature of the allegations in the Microsoft Complaint, the only type of liability that could possibly arise in this case, if any, would be liability for "personal and advertising injury".  Even if "personal and advertising injury" exists here (which it does not), the Umbrella policy contains a "personal and advertising injury" exclusion.  Policy Endorsement Form XL 21 33 11 00 contains the relevant version of the "personal and advertising injury" exclusion, which explicitly provides that "[t]his policy does not apply to personal and advertising injury."  Thus, coverage is barred under the Umbrella Liability Policy.

      42.      Plaintiffs seek a judicial declaration pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure as to the extent of its coverage obligation, if any, under the terms and conditions of the Commercial General Liability Coverage Form and the Umbrella Liability Policy.  In particular, Plaintiffs seek a judicial declaration as to whether and to what extent they may have a duty to defend and/or indemnify Defendants with respect to its liability in the underlying Microsoft Action.

      43.      Hartford has no adequate remedy at law.

**WHEREFORE** Hartford Casualty Insurance Company and Twin City Fire Insurance Company pray for judgment in their favor and against Defendants as follows:

1.      For a declaration as to the scope of coverage under the Commercial General Liability Coverage Form and the Umbrella Liability Policy for liability resulting from the underlying Microsoft Action, and specifically a declaration that Plaintiffs are not obligated to defend or indemnify SoftwareMedia.com, Inc., Perseus Trading, Adam Childers, and Todd Francis for any and all claims arising out of the events that occurred in connection with the Microsoft Action.

2.      For all other relief to which Plaintiffs may be entitled.

### JURY DEMAND

Plaintiffs Hartford Casualty Insurance Company and Twin City Fire Insurance Company hereby request a trial by jury on all issues to the full extent possible

DATED this 3rd day of November, 2010.


_____/s/*Rebecca L. Hill*_____
Rebecca L. Hill
Dale J. Lambert
Attorneys for Plaintiffs


<u>Address of Plaintiff</u>:

Hartford Casualty Insurance Company
One Hartford Plaza
Hartford, CT 06155